### J. P. Kelley v. The State.

#### No. 2133. Decided May 1, 1901.

**1.—Assault with Intent to Murder—Former Jeopardy—Practice.**

On a trial for assault with intent to murder, defendant pleaded former jeopardy, alleging that he had been previously tried and acquitted for the killing of another party which occurred at the same time and place as the assault for which he was now being prosecuted in this case. On motion of the State said plea was stricken out. Held, no error.

**2.—Same—Charge of Court.**

On a trial for assault with intent to murder, it became a question arising upon the evidence whether or not a certain valentine, introduced in evidence, which occasioned the difficulty, had been written by defendant; and the court charged the jury that the valentine could not be considered by them, "unless you find beyond a reasonable doubt that the defendant was connected with the production of said valentine." Held, upon the weight of evidence, and that the charge was tantamount to a direct instruction, that, if the jury thought defendant was the author of the valentine, they could consider it against him.

**3.—Same—Charge—Singling Out Testimony.**

It is never permissible for the court to single out any part of the testimony, which was legally admitted for a special purpose, and instruct the jury that it could be considered against defendant.

**4.—Same.**

In regard to the evidence pertaining to the valentine, as mentioned in subdivision 2, supra, a proper charge of court would have been to the effect that if the jury believed beyond a reasonable doubt that defendant wrote said valentine, then they could consider that fact as a circumstance going to show his animus and purpose and intent at the time of the attempted homicide; but unless they did believe beyond a reasonable doubt that defendant was the author of the valentine, they should not consider it for any purpose.

**5.—Same—Self-Defense—Charge of Court.**

On a trial for assault with intent to murder, growing out of a valentine claimed by the prosecutor to have been written by defendant, the mere fact that defendant may have written it would not per se authorize the prosecutor to assault him; and if the prosecutor and his brother did assault or make an un-

lawful attack upon defendant apparently with the purpose of killing or doing him serious bodily harm, defendant would have the right to defend himself and follow up such attack until all appearances of danger, viewed from his standpoint, had ceased; and it was error for the court not to so instruct the jury, as requested by defendant.

**6.—Same—Evidence.**

On a trial for assault with intent to murder, growing out of a valentine, alleged by the prosecution to have been written by defendant, the valentine is properly admissible in evidence if there was any testimony going to show either that defendant wrote it, or, knowing its contents, had urged it to be read at a party where it was received.

**7.—Same—Evidence in Explanation of Portions of a Valentine.**

Where, on the trial, a valentine had been introduced in evidence, it was not error to permit witnesses to explain the meaning of certain portions of it, since the matters explained were commonly understood in the neighborhood where defendant lived.

Appeal from the District Court of Falls.   Tried below before Hon. Sam R. Scott.

Appeal from a conviction of aggravated assault, under a charge of assault with intent to murder; penalty, a fine of $250.

The indictment charged appellant with assault with intent to murder L. B. De Walt (Boise De Walt), on the 22d day of February, 1898.

The opinion states the case.   The valentine, which caused the difficulty, was addressed to one Elias Smith, and was read at a valentine party given at Burt Brown's on the night of February 14, 1898.

*Rice & Bartlett* and *Z. I. Harlan,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was indicted for an assault with intent to murder, and upon trial was convicted of an aggravated assault, and his punishment assessed at a fine of $250.

We will make a brief statement of the facts:   Defendant had been accused by Boise De Walt and his brother, H. N. De Walt, of writing a scurrilous valentine, addressed to Lias Smith, which, among other things, stated Smith's association with the De Walt girls in an offensive manner, etc.   The evidence is conflicting on the proposition as to whether or not appellant wrote this valentine.   At any rate, the De Walts stopped defendant in his field (the defendant and the De Walt boys working adjoining farms), and asked defendant about the valentine.   When defendant was first accosted by the De Walts, Boise said to defendant that he was sorry defendant wrote the valentine, if he did write it.   Defendant asked him if he thought that he did.   Boise stated that everything went to prove defendant had written it.   Thereupon defendant drew his pistol and commenced shooting, without any further warning.   The De Walts each had a cotton planter, and were returning home with it at the time of the shooting.   Defendant was just across the wire fence, about fifteen feet away, plowing, at the time.   Defendant testified to the effect that when he met the De Walts he spoke, "Good

morning," to Boise; and Boise said, "Hold on; I want to see you." Defendant made no halt, but his horse stopped when Boise spoke. Defendant jerked the horse and Boise again said, "Hold on; I want to see you." After defendant said "Good morning," he asked the De Walts if they were done plowing corn, and Boise then said, "I want to know what in the hell you wrote that valentine and signed my sister's name to it, for." Defendant replied, "What valentine?" De Walt said, "By God! you need not deny it. I know you did it." Defendant told him he was mistaken. Boise said, "I have gotten it straight, and you won't do it any more." He had on his gloves and threw his lines off his hands, and dropped them on the planter handles, and started towards the fence. By that time H. N. De Walt had thrown his lines on his planter handles, got off his gloves and gotten to the head of his mule, between the mule and the fence, close to the fence. Then he said, "Yes, God damn you! I'll just blow your head off." Boise by that time had got to the fence. He grabbed the wire, pressed it down, and started to put his foot over the fence, and ran his hand in his jumper. Defendant grabbed his pistol and fired twice just as rapidly as he could. H. N. De Walt was about a foot from Boise, and they both fell. When H. N. De Walt said he was going to blow defendant's head off, he was pulling something out of his clothes. One of the shots killed H. N. De Walt, and the other seriously injured Boise. Appellant was tried for the murder of H. N. De Walt and acquitted. Upon the trial of this case he filed a plea of former jeopardy, averring that he had been formerly acquitted of this offense, in that the jury had found him not guilty of killing H. N. De Walt, which killing occurred at one and the same time with the assault on the prosecuting witness, Boise. Upon written motion of the State, this plea was stricken out by the court. Showing, as we take it, upon its face, that the plea was not sufficient, we do not think the court erred in sustaining the motion.

Upon the trial the court charged the jury as follows: "You are further charged that the valentine introduced before you, about which the controversy arose, can not be considered by you against defendant, unless you find, beyond a reasonable doubt, that defendant was connected with the production of said valentine." Appellant objected to said charge because it was upon the weight of the evidence, and because it authorized the jury to take said valentine as a criminative fact against defendant and consider it as such, in the event they found defendant was connected with its production, and because said charge gave undue prominence to, this issue. We think the charge of the court is subject to the criticism urged by appellant, and is upon the weight of evidence. There being evidence pro and con as to whether the valentine was written by appellant, it would have been proper to have given a charge limiting its consideration by the jury to the purpose for which it was admissible; but to tell the jury that it can not be considered against defendant unless they find defendant was connected with the production of said valentine was tantamount to saying that, if the jury thought the

defendant was the author of the valentine, then they could consider it against him. It is never permissible for the court to single out any part of the testimony, and instruct the jury that it can be considered against defendant. As indicated by the brief statement of the evidence, the occasion of the homicide and attempted homicide in the first instance was a certain valentine, either written or supposed to have been written by appellant. Now, if appellant wrote the valentine, said fact could be considered by the jury in passing upon and illustrative of the animus, purpose, and intent of appellant at the time, that is, it could be considered by the jury in passing upon the probable truth of the theory of the prosecution. To illustrate, if defendant wrote a scurrilous article without cause or excuse about the sisters of the injured parties, and they sought defendant for the purpose of ascertaining why it was done, the fact of it having been done would certainly be a circumstance more or less remote according to each particular case, going to show the probable truth of the statement, that he made a wanton and unprovoked assault upon the brothers of the girl inquiring about this scurrilous statement is equally true; that is, if defendant did not write the article, then it would be a circumstance to indicate the improbability of his making an unprovoked assault upon the injured parties. Therefore, we think it would have been proper for the trial court to have charged the jury in substance that, if the jury believe from the evidence beyond a reasonable doubt that defendant wrote the valentine in question, then you can consider said fact as a circumstance going to show the animus, purpose, and intent of appellant at the time of the attempted homicide; and if the jury did not believe beyond a reasonable doubt that defendant was the author of said valentine, they should not consider said valentine in the case for any purpose. Martin v. State, 38 Texas Crim. Rep., 285; Russell v. State, 37 Texas Crim. Rep., 314; Wilson v. State, 36 S. W. Rep., 287.

Appellant requested the court to charge the jury as follows: "Although you may believe from the evidence that defendant knew the contents of the valentine, and with such knowledge insisted upon its being read, still you are instructed that such knowledge and insistence will not deprive defendant of the right of self-defense; so, if you so believe that defendant was either concerned in writing said valentine, or that he did not write the same, but, with knowledge of its contents, insisted upon its being read, but further believe that at the time of the difficulty H. N. and L. B. De Walt, or either of them, acting together, was making, or attempting to make, an unlawful attack upon defendant, which reasonably appeared to defendant therefrom that their purpose was either to kill or do him serious bodily injury, then if you so believe defendant would have the lawful right to defend himself from such attack, and if he commenced to shoot under such circumstances, you are instructed that he would have the right to continue shooting at them or either of them until it reasonably appeared to him from his standpoint that he was out of danger from such unlawful attack." This

charge should have been given. Certainly the mere fact that appellant may have written a valentine, however obnoxious it might have been to the prosecutor, would not per se authorize the prosecutor to assault defendant; and if he, acting with his brother, made or was attempting to make an unlawful attack upon appellant, and it reasonably appeared to defendant that their purpose was either to kill him or do him serious bodily injury, then certainly appellant would have the right to defend himself against such attack, and to follow up such attack until all appearances of danger had ceased; and all this, of course, must be viewed from appellant's standpoint.

In bill number 1 appellant complains that the court permitted the valentine over which the difficulty arose to be introduced in evidence. He objects to the introduction of the valentine on various grounds, but nowhere does it appear that the objections urged are true. To illustrate, as one of his grounds, he objects that it was not shown, and would not be shown, that defendant wrote, or was cognizant or aware of the composition or writing of said valentine, or of the contents thereof, either at the time of the valentine party, or the difficulty between him and the De Walts. If this were a fact certified by the judge, then, clearly, the valentine would not have been admissible, as it would not illustrate anything or throw any light upon the difficulty; but, under the rules of this court, the certificate of the judge to the fact that appellant objected to certain testimony on certain grounds is not a certificate that those grounds in fact are true. Wright v. State, 36 Texas Crim. Rep., 35; Angley v. State, 35 Texas Crim. Rep., 427. And, for collation of authorities, see section 1123, White's Ann. Code Crim. Proc. For aught the bill shows, appellant may have confessed absolute knowledge and authorship of the valentine. However, in view of another trial, we will say the valentine is admissible if there is any evidence going to show either that defendant wrote it, or, knowing its contents, urged it to be read at the party where it was received. Nor do we think the court erred, as urged in bill number 2, in permitting explanations made by witnesses as to the meaning of certain portions of the valentine, since the meaning of portions the court permitted to be explained appeared to be commonly understood in the neighborhood where the difficulty occurred and defendant lived. For the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*