### HART CHEWNING v. THE STATE.

#### No. 6542. Decided January 18, 1922.

#### Rehearing Denied March 8, 1922.

**1.—Incest—Indictment—Words and Phrases—Then and There.**

Where upon trial of incest, the appellant contended that certain words were inserted in the indictment after its return by the grand jury, but it

appeared from the record that the indictment was sufficient regardless of the alleged change, there was no reversible error. Following Bailey v. State, 63 Texas Crim. Rep., 584.

2.—Same—Evidence—Letter—Explanation.

Where a letter written to the prosecutrix by a third party was in evidence, there was no reversible error to permit said witness to explain to the jury what he had reference to and meant by certain language in said letter. Distinguishing Ochoa v. State, 87 Texas Crim. Rep., 318.

3.—Same—Requested Charge—Former Marriage.

Where, upon trial of incest, there was no evidence showing any character of legal dissolution of the marriage relationship between the father of the alleged injured female and her mother, the wife of the defendant, there was no error in refusing a peremptory instruction to acquit. Following Vickers v. State, 69 Texas Crim. Rep., 633, and other cases.

4.—Same—Evidence—Declarations of Party Injured—Hearsay.

On trial of incest, there was no error in permitting the alleged injured female to testify that the morning after the alleged incestuous intercourse at a hotel in a certain place, she went to the courthouse with an officer, the objection being to hearsay evidence.

5.—Same—Accomplice—Charge of Court—Question of Fact.

Where the alleged female testified that she did not willingly submit to appellant, and the court submitted the question of an accomplice to be determined by the jury, there was no reversible error.

6.—Same—Rehearing—Letter—Explanatory Words—Rule Stated.

Where the State introduced a letter containing a certain declaration which obviously referred to some other declaration or transaction previously made, there was no error in admitting in evidence such explanation, under article 811, C. C. P., besides, the same explained ambiguous language in the letter, was introduced by the adverse party.

· Appeal from the District Court of Lamar.  Tried below before the Honorable Ben. H. Denton.

Appeal from a conviction of incest; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Burmingham & Lattimore* and *Sturgen & Sturgen*, for appellant. —On question of indictment:  Cited Compton v. State, 13 Texas Crim. App., 273, and cases cited in opinion.

On question of former marriage of prosecutrix's mother: McGrew v. State, 13 Texas Crim. App., 340;

*R. G. Storey*, Assistant Attorney General, and *R. E. Eubanks*, County Attorney, for the State.—On question of explaining letter: Smith v. State, 107 S. W. Rep., 844.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Lamar County of incest, and his punishment fixed at three years in the penitentiary.

There appears in the record an unfortunate controversy over an alleged change in the indictment herein, it being contended by appellant that as originally returned said indictment charged, in substance, that Hart Chewning "did then and there carnally know Golden Rea; the said Golden Rea then and there being the daughter of Pearle Chewning, his wife;" and that at some time undiscovered by appellant until after conviction, said indictment was changed by inserting between the words "his" and "wife," the word "lawful," and by adding at the end of the charging part of said indictment the words "who was then living." Affidavits are filed before us by appellant and his attorneys, and also by the district judge and clerk, county attorney and assistant county attorney. Any change in an indictment or other filed paper in any court raises a question of great gravity and should be carefully investigated, but in our view of the case a discussion or decision of whether such change was made or not is immaterial to our decision of the case. We think the indictment sufficient regardless of the alleged change. In our opinion it was sufficient to charge that appellant carnally knew Golden Rea, who was *then and there* the daughter of Pearle Chewning his wife. We think this sufficiently charges that Mrs. Chewning was then living and was the lawful wife of appellant. In Compton v. State, 13 Texas Crim. App. 271, the indictment charged that Daniel Compton . . . did . . . carnally know one Laura Griffin . . . said Laura Griffin *then and there* being the daughter of Mrs. Sarah Compton, the lawful wife of him, said Daniel Compton." We held in the opinion in that case that the words "then and there," referred as well to the fact that Mrs. Compton was the wife of the accused, as that Laura Griffin was then and there her daughter. If Mrs. Chewning was not living, she could not be *then and there* the wife of Hart Chewning. It was not necessary that the indictment allege that Mrs. Pearle Chewning, the wife of Hart Chewning, was his lawful wife. Bailey v. State, 63 Texas Crim. Rep. 584. The language of the statute makes penal the act of one who carnally knows his wife's daughter.

A letter written to prosecutrix by one Derrick was in evidence It contained the following language: "Very sorry we did not get to have the basket supper, wasn't you, because as you know you and I was going to Paris together and—Oh you know what." By a bill of exceptions appellant complains that said Derrick was permitted, over objection, to explain to the jury that what he had reference to and meant by said language, especially that part "Oh you know what," was that he and prosecutrix were going to Paris to have their pictures taken. Appellant's objection was that the language used was plain and the jury should have been allowed to pass on what it

meant free from any explanation of the witness. The rule seems well settled that such explanation was admissible. Branch's Ann. P. C., Secs. 92, 93 and 94 and collated authorities. Apparently appellant's contention was that said language conveyed the idea of a purpose on the part of Derrick and prosecutrix to engage in wrongful conduct in Paris. If the language was plain, as contended by appellant, it meant the same after Derrick's attempted explanation as before. If it was not plain and a hurtful construction was possible, the explanation was proper. There is no conflict in the case of Ochoa v. State, 87 Texas Crim. 308.

It is contended that a peremptory instruction for acquittal requested by appellant should have been given, because there was no evidence showing any character of legal dissolution of the marriage relationship between the father of Golden Rea and her mother, wife of appellant. The record discloses that no reference was made by any witness during the trial to the question of Mrs. Chewning having ever been married prior to her marriage to appellant. No one said or intimated that she had ever been married to any other man, and it was clearly not necessary for anyone to testify to an ending or dissolution of a relationship which was not referred to by any witness. Stanford v. State, 60 S. W. Rep. 253; Nance v. State, 17 Texas Crim. App. 385; Vickers v. State, 69 Texas Crim. Rep. 633.

No error was committed in allowing Golden Rea to testify that the morning after the alleged incestuous intercourse at a hotel in Paris, that she went to the court house with an officer. The objection to this testimony as shown by the bill of exceptions was, that said evidence was hearsay. We do not think same subject to such objection.

Complaint is also made of the fact that the trial court did not tell the jury in so many words, that Golden Rea was an accomplice. We find in the record no exception to the court's charge upon this or any other matter. Such exception is necessary in order to have presented such ground of complaint. The court submitted to the jury the question as to whether Golden Rea was an accomplice. This we think sufficient. The girl seems to have testified that she did not willingly submit to appellant on the occasion in question. It seems to be the well established rule that when there is any doubt in the court's mind as to the complicity of the alleged accomplice, the question should be submitted to the jury.

This disposes of the contentions of appellant as discussed in his brief. We have examined the other bills of exception appearing in the record, and are of opinion that none of them present any error or raise such question as that its discussion would be of any value.

Finding no error in the record the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

March 8, 1922.

MORROW, Presiding Judge.—A review of all the matters to which the motion for rehearing relates would be but a repetition of the original opinion.

On the point made that our conclusion was wrong touching the admissibility of the evidence explaining the words: "Oh! you know what" contained in a letter written by the witness Derrick to the prosecutrix, we are confirmed, by further examination of the subject, in the conclusion heretofore stated. In the case of Ochoa v. State, 87 Texas Crim. Rep. 318, to which appellant refers, the rule applied was that the *opinion* of the witness to the meaning of a letter was not to be received. In this case, the rule applied is that pertaining to the *explanation* of an *ambiguous* statement by the person who made it. As we indicated in the original opinion, we regard the evidence within the terms of Article 811 of C. C. P., which declares that when a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing, which is necessary to make fully understood or to explain same, may be given in evidence. The state, in this case, introduced a letter containing the declaration mentioned, which obviously refers to some other declaration or transaction previously made. The words: "Oh! you know that," unexplained, may be given many interpretations. The evidence introduced, explaining the transaction to which they did refer, apparently was properly received in obedience to the command of the statute mentioned. Whether so or not, its admissibility should be upheld on the ground that it explained ambiguous language in the letter introduced by the adverse party. These precedents we deem in, point: Cox v. State, 7 Texas Crim. App. 495; Vestal v. State, 3 Texas Crim. App. Rep. 468; Stephens v. State, 49 Texas Crim. Rep. 489; Matkins v. State, 63 S. W. Rep. 911; Hamer v. State, 60 Texas Crim. Rep. 341; Novy v. State, 138 S. W. Rep. 139; Jones v State, 35 Texas Crim. Rep. 565; Kelley v. State, 43 Texas Crim. Rep. 40. See also cases listed in Vernon's Tex. Crim. Stat. Vol. 2, p. 759. The cases cited are illustrative of the rule that an ambiguous writing may be explained by parole. The motion for rehearing is overruled.

*Overruled.*