## F. JONES v. THE STATE.

*No. 833.     Decided March 11th, 1896.*

### 1. Fraudulent Disposition of Mortgaged Property—Indictment—Description of the Property.

It is not required in an indictment for the fraudulent disposition of mortgaged property, to set out the mortgage by its tenor; and where the indictment alleges that certain personal movable property, describing it, was then and there under a valid lien and contract in writing, executed by accused on a certain date to a firm (nameing them), that defendant sold and disposed of said property, the said mortgage being then and there a valid subsisting and unsatisfied contract lien and mortgage upon said property, and was then and there owned and held by the mortgagees. Held: Sufficient.

### 2. Same—Allegations and Proof—Variance.

As it is not necessary to set out the mortgage in the indictment, by an exhibit copy, it is no valid objection to the introduction of the mortgage, when offered in evidence, that it covers and embraces a number of other articles of personal property

mortgaged at the same time, but not set out in the indictment. Although the mortgage may contain other items than those set out in the indictment, this constitutes no variance.

### 3.   Same—Objection to Evidence—Bill of Exceptions.

On a trial for fraudulently disposing of mortgaged property, the introduction of the mortgage in evidence was objected to because the property described in the mortgage was not the same property described in the indictment. Held: The bill of exception to the overruling of the objection should show the particular item or property which is not the same property.

### 4.   Same—Charge of Court.

On a trial for the fraudulent disposition of mortgaged property, where the court charged the jury, "If you fail to find that defendant signed the written instrument (the mortgage), or if you find the defendant signed the same, but thought he was signing a note and not a mortgage, and did not know he signed such mortgage at the time he sold and disposed of the property in controversy; if you find he sold and disposed of it; or, if defendant did not know that the goods in controversy were a part of those described in said mortgage, or, if you fail to find defendant guilty—then, in either event, you will acquit him." Held: Not obnoxious to the objection that it was liable to confuse the jury, but submitted the questions clearly and favorably to defendant.

### 5.   Same—Abbreviations—Evidence Explanatory of.

On a trial for fraudulently disposing of mortgaged furniture, it was not error to permit the State to prove the meaning of certain abbreviations used in the mortgage.

### 6.   Verdict—Certainty in.

Where the objection to the verdict was, that the jury used the word "jears" for "years,"—Held: Upon inspection of the original verdict, which was sent up with the record, that it is clearly susceptible of being read "years," and the intention of the jury is too plain for discussion.

APPEAL from the District Court of Wichita.   Tried below before Hon. GEORGE E. MILLER.

This appeal is from a conviction for the fraudulent disposition of mortgaged personal property, the punishment being assessed at two years' imprisonment in the penitentiary.

The property, as described in the indictment, was: "1 suit and springs; 4 oak diners; 1 breakfast table; 2 uph. chairs (meaning upholstered); 1 oak rocker; 45⅔ yds. (meaning yards) matting; 50 yds. (meaning yards) paper; 4 window shades; 1 mattress and 2 window poles."

The mortgage, which was introduced in evidence, was as follows:

"WICHITA FALLS, TEXAS, March 11, 1895.

"For value received, I promise to pay to the order of Smith Bros., the sum of $141.$\frac{40}{100}$ dollars, in installments, and at such times as follows, to-wit: $25 dollars, to be paid on the 11th day of March, 1895, and $30 dollars, each first of month thereafter, until the full sum of $141.$\frac{40}{100}$ dollars, shall have been paid.   This note is payable at the office of Smith Bros., in Wichita Falls, Texas.

"It is hereby stipulated and agreed, for and in consideration of the terms of the above promissory note, that the following described property, to-wit:

| 4 window shades......$ 5.00 | 2 window shades........$ 1.50 |
|---|---|
| 4 double stripps....... 50 | 50 yds. paper........... 1.75 |

| | |
|---|---|
| 1 suit and springs.....$16.00 | 1 mattress............$ 4.50 |
| 1 breakfast table...... 3.00 | 4 oak diners.......... 5.00 |
| 1 elm rocker.......... 3.50 | 1 center table blk....... 1.75 |
| 1 oak desk........... 6.00 | 1 lounge............. 20.00 |
| 1 kitchen safe......... 2.50 | 1 swing rocker......... 7.00 |
| 2 uph. chairs.......... 1.50 | 4 window poles......... 1.60 |
| 45⅔ yds. matting...... 10.30 | 1 6-piece uph. suit....... 50.00 |

"For the use of which to the maturity of this note is given is and shall remain the property, and under the control of Smith Bros., or assigns, and for default of payment, or if said Smith Bros. shall deem said goods in unsafety, be removed or otherwise, it shall on demand be returned to Smith Bros., or assigns, in good order and with pro rata payment for its use, which shall be the total of all paid on this note; it is understood and agreed, that Smith Bros. own said described property absolutely and the title remains in them until the said property is paid for in full; on failure to pay any monthly installment then all the payments shall be and become at once due and payable, and the said note shall then have fully matured. Smith Bros., or their agents, are hereby authorized to enter my premises, without any suit or process of law, and take possession of said property; if this note is put in the hands of an attorney for collection, after the maturity thereof, then I, F. Jones, further promise to pay 10 per cent. on the amount due, additional as attorney's fees. And if suit be instituted, then I, F. Jones, agree to pay all costs of said suit.

[ Signed]          "F. JONES.

"Witness: Kindall.

"Salesman: W. B. Smith."

W. B. Smith testified to selling the goods mentioned in the mortgage to the defendant, on the installment plan. The witness explained the meaning of the abbreviations used in the mortgage. That the goods mentioned were sold at two different times; the parlor set having been bought about four weeks after the other goods; that the mortgage was taken after the sale of the parlor set. Don't know whether defendant read the mortgage when he signed the mortgage, and don't remember to have read it over to him. Defendant paid $55 before he bought the parlor set. Witness testified, that if any of the property was sold by defendant, it was without his knowledge or consent. That he recovered the property, under a writ of sequestration, from Scott Thomas.

Scott Thomas testified to his having bought the property described in the indictment, from defendant for $16.50, and that it was afterwards taken from his possession by the constable. That defendant told him he had paid for the goods when he sold them to him; but, that he owed Smith Bros. for the parlor set, which witness proposed to buy also, and he would not sell it.

J. M. Alvey testified: "That when defendant left Wichita Falls, defendant deposited the parlor set with him until he (defendant) could advise him where to ship it to him."

Defendant testified: "That he was a minister of the gospel of the Missionary Baptist Church; was pastor of the colored Baptist Church at Wichita Falls. He testified to buying two lots of furniture from Smith Bros. The first lot for $52, which he had paid for before he bought the last lot—the parlor set. He testified to signing a note when he bought the parlor set, but denied that he had signed or executed the mortgage. Said the instrument he signed was not read to him, nor did he read it, and that if it contained the first lot of goods, he did not know it; and thought he was only signing an obligation for the last goods—the parlor set. He stated that the goods that he let Scott Thomas have were the goods he had paid for on the first purchase, and that he told Thomas he had paid for them.

*Hodges & Ofiel*, for appellant.—The court should have granted defendant's motion in arrest of judgment, because the indictment is vague, indefinite and uncertain as to the description of the property.

The court erred in overruling defendant's objections to the introduction of the mortgage. (1) Because the property was not sufficiently described in the mortgage. (2) There was a variance between the mortgage offered and that described in the indictment; the mortgage in the indictment described a less number of articles than that offered in evidence. (3) The property described in the mortgage is not the same property described in the indictment.

The court erred in permitting the witness, Smith, to testify as to the meaning of words and abbreviations used in the mortgage. Burk v. Ward, 32 S. W. Rep., 1047.

The court erred in the third subdivision of his charge, in this: "The court, after instructing the jury if they found the defendant did not sign the written instrument, or if he did sign the same, but believed it to be a note and not a mortgage, and did not know he had signed a mortgage at the time he had sold the property in controversy, if he sold same, or if defendant did not know the goods in controversy were a part of those described in the mortgage, or if you fail to find the defendant guilty, then in either event you will acquit him," thereby telling the jury if they failed to find the defendant guilty generally, they could consider the first, second and third clauses of said paragraph, and further leaving the jury to find defendant guilty if they found that he signed the instrument in writing and had sold the goods, thereby abridging the defendant's defense and rendering the same obscure with the jury. Greta v. State, 9 Tex. Crim. App., 433; White v. State, 18 Tex. Crim. App., 63.

The verdict of the jury fails to assess any punishment, in that it fails to designate any time the defendant is to suffer, but says: "We, the jury, find the defendant, F. Jones, guilty as charged in the indictment, and assess his punishment at confinement in the penitentiary for two jears," using the word "jears" for years. Code Crim. Proc., Art. 712; Wooldridge v. State, 13 Tex. Crim. App., 443.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted for selling personal property, then being under a written mortgage, with intent to defraud the person holding such mortgage, and his punishment assessed at confinement in the penitentiary for two years, and he prosecutes this appeal. On the trial of the case, the State offered in evidence a mortgage in writing. Appellant objected to the introduction of the same: (1) Because the property was not sufficiently described so that the same can be identified, and said mortgage is void, because said property was not sufficiently described. (2) Because there is a variance between the mortgage described in the indictment and the one offered in evidence, and the one to which this objection is made, in this: The indictment describes a mortgage covering a less number of articles than the mortgage does. The mortgage describes other goods or property than those mentioned in said indictment. (3) Because the property described in the mortgage is not the same property described in the indictment. The court overruled said objections, and appellant reserved his bill of exceptions. With reference to the first objection, we think the property is sufficiently described in the indictment. The indictment in this case does not propose to set out the mortgage, either in hæc verba or according to its substance. It alleges merely that certain personal and movable property, describing it, was then and there under a valid contract, lien and mortgage in writing, executed by appellant, on the 11th day of March, 1895, to a firm composed of W. B. Smith and H. C. Smith; that appellant sold and disposed of said property, the said mortgage being then and there a valid, subsisting, and unsatisfied contract, lien, and mortgage upon said property, and was then and there owned and held by said Smith Bros. as aforesaid. In this character of case, we do not understand that it is necessary to set out, according to its tenor, the mortgage in question. See Satchell v. State, 1 Tex. Crim. App., 438; Glass v. State, 23 Tex. Crim. App., 425. The indictment in this case, according to these decisions, was sufficient. The variance claimed by the appellant is because the mortgage which was produced in evidence covered more property than was stated to have been disposed of in the indictment. On an inspection of the indictment and the mortgage offered in evidence, it does appear that, besides the articles alleged to have been fraudulently disposed of by appellant, the mortgage also contained a number of other articles of personal property, mortgaged at the same time. As it is not necessary to set out the mortgage by an exhibit copy, we hold that if the mortgage, when produced, covers the articles set out in the indictment, although it may contain other items, there is no variance; the allegation of the indictment being that the property therein set out and described was under a valid and subsisting written mortgage, and that the same was disposed of with intent to defraud. It is true that, on the trial of the case, appellant might contend that the additional property was sufficient to pay off and satisfy the mortgage, and that, consequently, there could be no fraud, or intent to defraud, in the sale or disposition of the property alleged in the indictment to have been trans-

ferred, and he might offer proof to show such facts in defense; but, in response thereto, the State would be permitted to show that the other property (being live stock) had died or been destroyed without the fault of the mortgagor, or had previously been sold by him, thus destroying or impairing the security held by the mortgagee, and show by this means that the disposition of the property charged to have been sold in the indictment was with intent to defraud.   Because such proof could be offered on the part of appellant and on the part of the State, it does not follow that it was necessary to have alleged the same.   Of course, where such extraneous evidence is offered, the court will take care, in its charge, to guard the rights of the defendant, should there appear any danger of his conviction for selling and disposing of other property than that alleged in the indictment.  In such case, the court will properly limit the purpose of such testimony.   In regard to the third ground of objection urged by appellant in this bill of exception, he does not show wherein the property described in the mortgage is not the same property described in the indictment.   If any item in the indictment is not set out and described in the mortgage, the bill should have directed our attention to that particular item.   See, Willson's Crim. Stat., § 2516, and authorities there cited; McGrath v. State, ante p. 413; Angley v. State, ante p. 427.

Appellant excepted to the following charge of the court, given on the trial of this case, to-wit:   "If you fail to find that the defendant signed the written instrument referred to in the first subdivision of this charge; or if you find the defendant signed the same, but thought he was signing a note, and not a mortgage, and did not know that he had signed such mortgage at the time he sold and disposed of the property in controversy, if you find that he sold and disposed of it; or if defendant did not know that the goods in controversy were a part of those described in said mortgage; or if you fail to find the defendant guilty—then, in either event, you will acquit him.   Appellant excepted to such charge for the following reasons: (1) Because said charge did not present the law applicable to the defense relied upon by the defendant; (2) because the latter part of said charge was liable to lead the jury into the belief that they could not consider the first part of said subdivision, unless they found the defendant not guilty; and, generally, because it abridged the defendant's defense, and rendered the same obscure to the jury.  We do not agree with the contention of appellant.   The court was simply submitting the issues as presented by the evidence, in which the appellant claimed that he had not given any mortgage, but that he was simply signing a note, and not a mortgage.   This did not injure the appellant, and only submitted those questions clearly, and perhaps a little favorably to the appellant.   The contention of appellant that the charge, as given, was liable to confuse the jury, in that the latter portion thereof, in which he told them, if you fail to find the defendant guilty, you will acquit, is not well taken.   It will be noticed, by an inspection of such charge, that it presents each phase of his defense, and instructed the

jury, if they found either one of said matters set forth in said charge to be true, to render a verdict of not guilty.   On the trial of the case, the State was permitted to prove, over the objection of the appellant, that the term "Uph" in the mortgage meant "upholstered," and "one suite and springs" meant bedstead, bureau, washstand, and bed springs.   Appellant objected, because said testimony varied the terms of the written instrument, and was inadmissible to explain what the meaning of the written instrument was.   These expressions were abbreviations, doubtless well known in the furniture trade; and in our opinion it was admissible, between the parties to said written instrument, to explain what said abbreviations meant.   If such terms did not have such meaning in the trade, and if the parties to said contract did not so understand them, it was admissible for the appellant to offer evidence controverting the State's proof on the subject.   Appellant, as one of the grounds of his motion for a new trial, says that the punishment assessed by the jury is not certain, in that the jury used the word "jears" for the word "years."   In support of said motion, the original verdict has been sent up with the record for our inspection.   The word in the verdict in connection with punishment looks more to us like "fears" than "jears," as claimed; but it is clearly susceptible of being read "years," and, in our opinion, it is sufficiently certain.   The intention of the jury in this matter is too plain for discussion.   The charge of the court sufficiently presented the issues arising in the case.   The jury found the defendant guilty, and we see no reason to disturb the verdict.   The judgment and sentence of the lower court are accordingly affirmed.

*Affirmed.*